IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

TRISTAN BALDWIN,

        Plaintiff

v.                                   Case No. 2:24-cv-00538
                                   (Consolidated with Case No.
                                   2:25-cv-00009)

DERRICK WILLIAMS, U.S. MARSHAL,
2 UNIDENTIFIED MARSHALS, and
1 UNIDENTIFIED KANAWHA COUNTY SHERIFF ("JOHN DOES"),

        Defendants.

## AMENDED PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the Court is Defendant Derrick Williams' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 32).

## I.    *RELEVANT FACTS AND PROCEDURAL HISTORY*

On September 7, 2023, an arrest warrant for Tristan Monroe Baldwin ("Plaintiff") was received by the United States Marshal Service ("USMS") concerning violations of Plaintiff's terms of federal supervised release. (ECF No. 32, Ex. 1; ECF No. 33 at 1). The warrant was assigned to the S/WV CUFFED Task Force ("Task Force"). (*Id.*) According to the Declarations of Defendant Deputy United States Marshal Derrick Williams ("Williams") and Supervisory Deputy United States Marshal Frederick W. Lamey, all defendants named herein were working as members of the Task Force at the

time of Plaintiff's arrest on the warrant on September 18, 2023.  (ECF No. 41, Exs. 1 and 2).

This matter is proceeding on Plaintiff's Amended Complaint.  (ECF No. 20).  The Amended Complaint alleges that, on September 18, 2023, while he and his uncle were unloading materials at a recycling center in or around Charleston/Sissonville, West Virginia, Plaintiff received a telephone call from his former fiancée's phone, but it was an unidentified United States Marshal on the phone, who directed him to turn himself in for an alleged violation of his terms of supervised release.  (*Id.* at 1).  Plaintiff stated that he was scared and offered to turn himself in at the courthouse, but the Marshal refused.  Plaintiff hung up the phone and asked his uncle to take him to the courthouse when they were finished unloading their materials.  (*Id.*)  Shortly thereafter, Plaintiff heard someone say, "Put your fucking hands up!" and Plaintiff "froze with [his] hands in the air."  (*Id.*)  He further claims that he heard undecipherable screaming and was then "maliciously slammed to the ground and kneed, punched, [and] kicked all in the temples, face and head area."  (*Id.*)

Plaintiff claims that he was "not lucid" and drifted in and out of consciousness. (*Id.*)  Although in the initial complaint, Plaintiff alleged that he "remembers nothing until he woke up in ICU at General in Charleston[,]" in the Amended Complaint, he recalls being taken first to the South Central Regional Jail ("SCRJ") where he was evaluated by prison medical staff, with photographs being taken and reports being made.  (ECF No. 2-1 at 1; ECF No. 20 at 1).  He was then denied entrance into the jail and was taken to the hospital by ambulance.  (ECF No. 20 at 1).  Plaintiff further alleges that, due to injuries suffered from the force used against him during his arrest, he "was put on life support, put on a ventilator, and in a coma."  (*Id.*)  He claims that he "almost

died" and continues to suffer from Post-Traumatic Stress Disorder ("PTSD"), anxiety, headaches, neck and back pain. (*Id.*) He seeks monetary relief from each defendant in both their "official and regular [individual] capacity." (*Id.*)

Because Williams was the only defendant specifically identified, he is the only defendant who has been served with process. On February 18, 2025, Williams filed the instant Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 32) and Memorandum of Law in support thereof (ECF No. 33). Williams' motion asserts that: (1) he is not subject to suit in his official capacity; (2) that Plaintiff's claim does not arise under 42 U.S.C. § 1983; (3) that Plaintiff's claim is not actionable under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971); and (4) that Williams is entitled to qualified immunity. (*Id.*)

On March 4, 2025, the undersigned entered an Order and Notice, pursuant to the holding in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right and an obligation to file a response to Defendant's motion, of the types of evidence that he must offer to overcome a motion for summary judgment, and setting deadlines for Plaintiff's response and Defendant's reply briefs. (ECF No. 35). On March 20, 2025, Plaintiff responded and provided his own affidavit, which largely repeats the allegations contained in his Amended Complaint and does not specifically address the legal arguments made in Defendant's motion. (ECF No. 40).

On March 24, 2025, in response to Plaintiff's motions seeking subpoenas for medical records and other information concerning his arrest, Defendant offered the Declarations of Defendant Williams and Supervisory Deputy Marshal Frederick W. Lamey, which confirmed that Plaintiff was arrested by the USMS's CUFFED Task Force, of which all defendants were members. (ECF No. 42, Exs. 1 and 2). Thereafter, Plaintiff

filed copies of some of his medical records as evidence of his alleged injuries.  (ECF No. 46, Ex. 1).  Briefing has concluded and this matter is ripe for resolution.

## II.      STANDARDS OF REVIEW

A.      Dismissal under Rule 12(b)(6).

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to liberally construe such complaints.   In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss.  *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). Despite the liberal construction requirement, the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

    B.    Summary Judgment under Rule 56.

Defendant alternatively moves for summary judgment. In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is required when a party fails to make a showing sufficient to

establish an essential element of a claim. *Celotex,* 477 U.S. at 322-23. The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Once the moving party demonstrates such a lack of evidence, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). "A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." *Brown v. Showboat Atlantic City Propoco, LLC,* No. 08-5145, 2010 WL 5237855, *2 (D.N.J. Dec. 16, 2010) (citing *Saldana v. Kmart Corp.,* 260 F.3d 228, 232 (3d Cir. 2001). Rather, "the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Id.* (citing *Anderson,* 477 U.S. at 256-57). Accordingly, summary judgment will generally be granted unless a reasonable jury could render a verdict for the non-moving party on the evidence presented. *Anderson,* 477 U.S. at 247-48.

A court must not resolve disputed facts or weigh the evidence and may not make determinations of credibility. *Russell v. Microdyne Corp., 65 F .3d* 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set

forth specific facts showing that there is a genuine issue for trial.  *Sprenkle v. Hartford Life Ins. Co.,* 84 F. Supp.2d 751 (N.D.W. Va. 2000).

## III.    DISCUSSION

A.    Williams is not subject to suit in his official capacity.

Plaintiff's Amended Complaint alleges a use of excessive force by the defendants during his arrest, which arises under the Fourth Amendment to the United States Constitution.  To the extent Plaintiff raises a claim against Defendant Williams in his official capacity, Williams asserts that this Court is without subject matter jurisdiction because the United States has not waived its sovereign immunity for money damages claims brought under the federal constitution.  (ECF No. 33 at 4).

As noted by Williams' motion, "[a]ny claims against an individual USMS employee in their official capacity are tantamount to an action against the United States itself."  *See Dugan v. Rank*, 372 U.S. 609, 620 (1963).  (*Id.*)  Moreover, absent a waiver of sovereign immunity, the United States cannot be sued for money damages.  *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941).   As further noted by Williams' motion, Congress has not waived such immunity with respect to claims under the United States Constitution.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 485-86 (1994).   Plaintiff has not sufficiently opposed this argument; thus, it is undisputed.  Consequently, the undersigned proposes that the presiding District Judge **FIND** that this Court lacks subject matter jurisdiction over any claim against Williams in his official capacity and such claim must be dismissed.

B.    Plaintiff's claim does not arise under § 1983.

Plaintiff's Amended Complaint also alleges that he is bringing a claim under 42 U.S.C. § 1983.  To state a claim for relief under § 1983, however, Plaintiff must establish:

(1) that "some person has deprived him of a federal right" and (2) that "the person who has deprived him of that right acted under color of state . . . law." *Curbelo v. Pendergraph*, 124 F. App'x 162, 162 (4th Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  (ECF No. 33 at 4).

Although the Amended Complaint summarily cites to § 1983, Plaintiff has not claimed that Williams acted under the color of state law; nor can he, as Williams was a federal law enforcement officer acting under color of federal law, and, thus, he is not subject to suit under § 1983. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (§ 1983 "does not apply to federal actors"). (*Id.* at 4-5).  This assertion is, likewise, undisputed by Plaintiff.  Therefore, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's § 1983 claim must also be dismissed.

C.    Plaintiff's claim is not actionable under *Bivens*.

While Congress created liability under § 1983 for alleged violations of federal constitutional or statutory law by state actors, it has never enacted an equivalent provision for liability of federal actors.  However, in 1971, the Supreme Court created an implied cause of action for money damages under the Fourth Amendment in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), where the plaintiff alleged that federal narcotics agents manacled him, threatened his family, engaged in a warrantless search, and arrested him without a warrant.  Although not discussed in any detail, the *Bivens* opinion also characterized the complaint therein to include an allegation that "unreasonable force was employed in making the arrest." *Id.* at 389.

Since *Bivens*, the Supreme Court has extended such liability only twice: (1) an implied cause of action under the Fifth Amendment for sex discrimination by a United

States Congressman in *Davis v. Passman*, 442 U.S. 228 (1979); and (2) an implied cause of action under the Eighth Amendment for a federal prisoner's claim of inadequate medical care in *Carlson v. Green*, 446 U.S. 14 (1980). Post-*Carlson*, the Supreme Court "came to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power[,]" *Hernandez v. Mesa*, 589 U.S. 93, 99 (2020), and has "declined 11 times to imply a similar cause of action for other constitutional violations." *See Egbert v. Boule*, 596 U.S. 482, 484 (2022). Thus, "the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity" and has affirmatively stated that, if "called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Id*. at 7, quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) and *Egbert*, 596 U.S. at 491, 502. Consequently, the Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Correctional Servs. Corp. v. Malesko,* 534 U.S. 61, 68 (2001). In fact, another member of this Court has aptly described *Bivens* as "zombie precedent." *Wickline v. Cumberledge*, No. 2:23-cv-00799, 2024 WL 4340045, at *7 (S.D.W. Va. Sept. 27, 2024) (Johnson, J.).

Courts faced with a potential *Bivens* claim must now engage in a "highly restrictive" two-step inquiry to determine whether the case presents "a new *Bivens* context" and, if so, whether there are "special factors" that counsel against extending such liability. *Egbert*, 596 U.S. at 492-93; *Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. 2023); *see also Earle v. Shreves*, 990 F.3d 774, 778 (4th Cir. 2021) ("[T]he analytical framework established by the *Ziglar* Court places significant obstacles in the path to recognition of an implied cause of action [under *Bivens*]."). Essentially, the Court must determine "whether there is any reason to think that Congress might be better equipped

to create a damages remedy." 596 U.S. at 492. The Supreme Court has cautioned that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez, supra,* 589 U.S. at 102). (ECF No. 33 at 5).

Williams' motion argues that this case "presents a new *Bivens* context," because, unlike *Bivens*, which involved a warrantless search and arrest by narcotics agents, Plaintiff was arrested by task force officers with a different federal agency, the USMS, pursuant to a validly obtained warrant, executed in a public place. Thus, Williams asserts that Plaintiff's case plainly involves "a new category of defendants." (ECF No. 33 at 6-12). In support of this assertion, Williams notes that "[t]he four courts of appeals to consider the issue have agreed that cases involving the execution of arrest warrants by a Marshals Service task force arise in a new context and there are special factors counseling hesitation in this context." *See Robinson v. Sauls*, *et al.*, No. 23-10719, 2024 WL 2821127 (11th Cir. June 4, 2024); *Logsdon v. USMS*, 91 F.4th 1352, 1358 (10th Cir. 2024); *Lewis v. Bartosh*, 22-3060-pr, 2023 WL 8613873, at *2 (2d Cir. Dec. 13, 2023); *Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *4 (6th Cir. July 25, 2023). (ECF No. 33 at 6-7).

While it appears that the United States Court of Appeals for the Fourth Circuit has not yet directly answered this question, Williams' motion further notes that several judges of this United States District Court, including the presiding District Judge, have previously found that a use of force during the execution of an arrest warrant by a USMS task force is a new context under *Bivens* and that there are special factors that counsel against extending such liability here. *See Lester v. Sizemore*, No. 5:24-cv-00054, 2024 WL 4491643, at *5 (S.D.W. Va. Oct. 15, 2024) (Volk, C.J.) (finding that Plaintiff's claims

"would require scrutiny of a new category of defendants – appointed members of a USMS joint task force"); *Wickline*, *supra*, 2024 WL 4340045, at *5 (Johnson, J.) (finding that temporarily deputized United States Marshals are "beyond *Bivens*' ambit"); *Manriquez v. Kanawha Cty. Sheriff's Dep't*, No. 2:22-cv-00406, 2024 WL 3898108, at *6 (S.D.W. Va. Aug. 21, 2024) (Goodwin, J.) (finding USMS task force presented "a new category of defendants" under *Bivens*).  (ECF No. 33 at 7 n.4).

Like these decisions, Williams' motion highlights the "'distinct' legal mandate" and specialized police work of USMS joint task forces, which require the participation of state and local officers.  (*Id*. at 7).  His motion states:

> By statute, the Marshals Service's ability to apprehend violent fugitives depends on the participation of state and local officers to staff its task forces.  Allowing *Bivens* claims against task force members would "[c]hill[] participation in joint task forces," *Logsdo*n, 91 F.4th at 1358, and "negatively affect" their work, *Cain*, 2023 WL 6439438, at *4.  Additionally, "adequate alternative remedies" are available. *Robinson*, 2024 WL 2821127, at *7; *see also Logsdon*, 91 F.4th at 1359; *Cain*, 2023 WL 6439438, at *4.

(*Id*. at 7).  Williams' motion details the creation of USMS task forces to pursue fugitives and execute federal, state, and local arrest warrants, and the power to federally deputize officers from other jurisdictions to perform such important governmental functions which, he claims, distinguishes such task forces from other types of police work.  (*Id*. at 9-11, 15-17).  Furthermore, the fact that Congress has never created a damages remedy in its codification of such task forces, as well as the potential to dissuade participation of other officers if such liability were created, are special factors that counsel against implying such a remedy under *Bivens*.  (*Id*. at 10-11).

Williams' motion further asserts:

> Courts "do not evaluate a potential *Bivens* cause of action 'at the level of "the Fourth Amendment" or even at the level of 'the unreasonable-

searches-and-seizures clause.'" [*Hicks v. Ferreyra,* (*Hicks II*)], 64 F.4th [156] at 167 [4th Cir. 2023)] (quoting *Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021)).    *Egbert*, like *Bivens*, involved Fourth Amendment excessive-force claims, but the Court reasoned that even "parallel circumstances" were not enough to justify a *Bivens* claim. *Egbert*, 596 U.S. at 501 (quotation marks omitted); *see also Mays*, 70 F.4th at 204-05; *Annappareddy*, 996 F.3d at 135-36.    As the Fourth Circuit explained, *Bivens* involved "a claim grounded on the right to be free from warrantless searches and seizures."    *Hicks II*, 64 F.4th at 167 (emphasis in original).    In the Court's view, the "issue in *Bivens* was whether a plaintiff was entitled to seek damages in a civil action after federal narcotics officers conducted a warrantless search of his apartment, arrested him for alleged narcotics violations, and later subjected him to a visual strip search."    *Id.* at 165.    The Court has "distinguished that context from the context of searches authorized by a warrant."    *Id.* at 167; *Annappareddy*, 996 F.3d at 135-37.

(*Id.* at 11).    Thus, the fact that *Bivens* and the instant case both involve the alleged use of excessive force does not justify an extension of *Bivens* liability here.    The duty to create such liability "unquestionably lies with Congress."    *Wickline*, 2024 WL 4340045, at *7.

Williams further argues that Plaintiff's *Bivens* claim fails because Plaintiff has available alternative remedies.    (*Id.* at 13-15).    In *Egbert*, the Supreme Court held that *Bivens* should not be extended to those contexts where a plaintiff has alternate remedies available to him.    596 U.S. at 493 ("Finally, our cases hold that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'"), citing *Ziglar*, 582 U.S. at 136-37; *see also Bulger v. Hurwitz,* 62 F.4th 127, 140 (4th Cir. 2023), quoting *Dyer v. Smith*, 56 F.4th 271, 279 (4th Cir. 2022) ("An alternative remedy weighs against recognizing a new *Bivens* claim even if it is less effective than the damages that would be available under *Bivens* and is not expressly identified by Congress as an alternative remedy.").    (*Id.* at 13-14).

Williams asserts that alternative remedies exist under the USMS's statutory and regulatory grievance processes and the Federal Tort Claims Act ("FTCA"). He cites to several cases holding that the USMS internal grievance procedure and the Department of Justice's Office of Inspector General (OIG) investigation process are adequate alternative procedures that preclude application of *Bivens* to cases such as this. *See Cain*, 2023 WL 6439438, at *4; *David v. Dotson*, No. 20-13123, 2021 WL 5353099, *2 (11th Cir. Nov. 17, 2021). (ECF No. 33 at 13-15). He also points to an alternative tort remedy under 31 U.S.C. § 3724, permitting settlements by the Attorney General of claims for personal injury, death, or property damage caused by investigative or law enforcement officers employed by the Department of Justice for "not more than $50,000." (*Id.* at 15). As previously noted by another member of this Court, the Supreme Court has recognized that such alternative remedies foreclose extension of *Bivens* liability "even where the remedial scheme is less effective than a *Bivens* remedy would be—or is downright lousy." *Wickline*, 2024 WL 4340045, at *6 (citing *Bulger*, 62 F.4th at 140).

The undersigned proposes that the presiding District Judge **FIND** that the facts of this case undisputedly present a new context involving a new category of defendants against whom Plaintiff had or has alternative available remedies. Accordingly, the presiding District Judge should **FIND** that Plaintiff's alleged Fourth Amendment claim against Defendant Williams constitutes an improper extension of *Bivens* liability requiring dismissal of such claim as a matter of law.[1]

---

[1] Because there is no plausible *Bivens* or other federal constitutional claim, the undersigned believes it is unnecessary to address Williams' qualified immunity argument raised in his motion.

D.    Plaintiff's claims against the other defendants likewise fail.

As demonstrated in the undisputed Declarations of Defendant Williams and Supervisory Deputy United States Marshal Frederick W. Lamey, the other three defendants, though unidentified by Plaintiff, were acting as members of the USMS federal task force as well.  Consequently, the same legal analysis applies to the claims against them.  First, to the extent that those defendants were acting in their official capacity as federal law enforcement officers at the time of Plaintiff's arrest, sovereign immunity bars any claim against them in their official capacity.  Furthermore, § 1983 does not apply to any of those officers – even the alleged Kanawha County Deputy Sheriff, who was specially deputized as a member of the Task Force at that time.  In that role, these defendants were acting under color of federal, not state, law.  Consequently, § 1983 is inapplicable.  Finally, as members of the USMS Task Force, who are alleged to have used excessive force while executing a federal arrest warrant, for the same reasons as set forth in the analysis of Plaintiff's *Bivens* claim against Williams, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's alleged Fourth Amendment claims against the unidentified defendants constitute an improper extension of *Bivens* liability requiring dismissal of such claims as a matter of law.

## IV.    *RECOMMENDATION*

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendant Williams' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 32) and **DISMISS** the claims against all Defendants, and this civil action, with prejudice.

The plaintiff is notified that this Amended Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable

Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Goodwin.

The Clerk is directed to file this Amended Proposed Findings and Recommendation in both above-referenced civil actions and to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

May 7, 2025

Dwane L. Tinsley
United States Magistrate Judge